# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2952

_____

Patricia Van Winkle,        *
          *
      Appellant,      *
          *   Appeal from the United States
   v.           *   District Court for the Western
          *   District of Arkansas.
JoAnne Barnhart,[1] Social Security  *
Administration Commissioner,    *     [UNPUBLISHED]
          *
      Appellee.      *

_____

Submitted:  December 20, 2002
Filed:  January 15, 2003

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and MELLOY, Circuit
    Judges.

_____

PER CURIAM.

Patricia Van Winkle appeals the district court's order affirming the denial of disability insurance benefits and supplemental security income.  Having carefully reviewed the record, see Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (standard of review is narrow, and appeals court affirms if Commissioner's findings

_____

[1]JoAnne Barnhart has been appointed to serve as Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

are supported by substantial evidence on record as whole), we affirm in part and reverse in part.

In her September 1997 applications and subsequent filings, Van Winkle alleged disability from, inter alia, headaches; arthritis; a history of a mastectomy; anxiety; memory and concentration problems; and depression with suicidal thoughts. Van Winkle has a college degree, and at the time of the July 1999 administrative hearing, she was fifty-eight. She had worked as a nursing-home activity director, in medical records, and at a bakery. In September 1997 she had quit her last job, which was providing home care for an Alzheimer's patient.

After the administrative hearing, an administrative law judge (ALJ) found that (1) Van Winkle's combined impairments--hypertension, headaches, and degenerative joint disease of the feet and right knee, thoracic-spine degenerative changes, recurrent moderate major depression, and dysthymic disorder--were severe, but not of listing-level severity; (2) her statements about her inability to work were not entirely credible; (3) the opinions of her mental-health providers were "in significant contrast" to treatment notes; (4) she had the residual functional capacity (RFC) to perform the full range of work activity without exertional limitations, and her RFC was not significantly diminished by nonexertional limitations; and (5) her past relevant work (PRW) would not require work functions precluded by any medically determinable impairment. In a psychiatric review technique form (PRTF), the ALJ found that Van Winkle was slightly restricted in daily-living activities and social functioning; that she was seldom deficient in concentration, persistence, or pace; and that she had never deteriorated or decompensated at work or in work-like settings.

Van Winkle first argues that she was disabled under Listings 12.06 (anxiety-related disorders) and 12.08 (personality disorders). We disagree. Van Winkle may have met some of the Section A criteria for Listing 12.06, but she did not meet the Section B or C criteria, see 28 U.S.C. Pt. 404, Subpt. P, App. 1, § 12.06 (2002)

(claimant must meet requirements in A and B, or A and C); and as to Listing 12.08, the record contains no clear and definite physician's diagnosis of a personality disorder, see 28 U.S.C. Pt. 404, Subpt. P, App. 1, § 12.00 D.1.a. (2002) (requiring evidence from acceptable medical source showing whichever medically determinable mental impairment is at issue in listing). We also reject Van Winkle's arguments about ordering a psychological consultation and assessing her ability to afford care, because a psychological consultation was performed in February 1998, and nothing in the record indicates that Van Winkle's financial status prevented her from obtaining care for her medical or psychological problems.

Van Winkle contends that the ALJ failed to give proper weight to the opinions of her treating mental-health professionals about her ability to work. We conclude that the ALJ correctly discounted the September and December 1998 opinions of a Saline County Counseling Clinic social worker and psychiatrist: those professionals had quit treating Van Winkle in mid-June 1998, and their statements were not only conclusory and vague, but were contradicted by their most recent assessments of Van Winkle. See Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (when treating physician's opinion is inconsistent or contrary to medical evidence, it is entitled to less weight).

We disagree, however, with the ALJ's decision to discount the July 1999 opinion of Van Winkle's Community Counseling Service (CCS) treatment team that Van Winkle was unable to maintain gainful employment because of her lack of motivation, depressed episodes, and frequent anxiety attacks. First, Van Winkle's treatment at CCS, which started in August 1998 when she relocated, was comprehensive and included a supported employment program in which Van Winkle had participated since at least December 1998; thus, CCS treatment team members had the opportunity from December 1998 to July 1999 to assess routinely Van Winkle's mental RFC. Second, as part of the supported employment program, Van Winkle had apparently worked briefly in the office of psychiatrist Robert Farrell, who

was a member of the team. Third, the team's opinion was consistent with the periodic global-assessment-of-functioning findings of CCS staff, and was not entirely inconsistent with Dr. Farrell's contemporaneous monthly assessment that Van Winkle was mildly depressed and was reporting more headaches and tension. Although CCS records indicate Van Winkle had improved on medication and was at times cheerful and participating appropriately, they also reflect repeated instances of increased anxiety and depression with suicidal thoughts, insomnia, social isolation, and poor concentration; the records thus fail to show any sustained period of improved functioning. In these circumstances, the ALJ should have requested that the CCS treatment team complete a PRTF and functional-capacity form to clarify how Van Winkle's mental problems impacted her ability to work. See Bowman v. Barnhart, 310 F.3d 1080, 1082-85 (8th Cir. 2002) (even if claimant is represented by counsel, ALJ has duty to develop facts fully and fairly; where long-term treating doctor's entries and opinion letter were somewhat cursory, ALJ was obligated to contact him for added evidence and clarification of claimant's RFC).

Van Winkle also challenges the ALJ's credibility findings. We find that the ALJ gave multiple valid reasons for discrediting her subjective physical complaints. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (if adequately explained and supported, credibility findings are for ALJ to make). In contrast, two of the three reasons the ALJ gave for discrediting Van Winkle's subjective *mental* complaints are not supported by substantial evidence. Contrary to the ALJ's findings, Van Winkle consistently sought treatment for her mental impairments; from her alleged date of onset, she was either hospitalized or in outpatient treatment. And although there are periodic reports of improvement by her mental-health providers, the record also shows--and the ALJ failed to acknowledge--repeated instances of symptomatology related to depression and anxiety, despite treatment. Cf. Bowman, 310 F.3d at 1083 (finding no evidence that medications alleviated claimant's pain, swelling, and depression to point where she could return to PRW).

-4-

Finally, Van Winkle raises issues with the ALJ's RFC findings, contending that she has significant nonexertional limitations, both physical and mental. She argues, at least implicitly, that the ALJ improperly concluded she could perform her PRW. Because we conclude that the ALJ improperly discounted the July 1999 opinion of the CCS case management team and improperly discredited Van Winkle's subjective mental complaints, the ALJ's mental RFC findings--which essentially included no limitations--are also called into question. See Pearsall, 274 F.3d at 1217-18 (ALJ is responsible for determining RFC based on medical records, observations of treating physicians and others, and claimant's own description of limitations; ALJ must first evaluate claimant's credibility).

Significantly, upon their review of the record, the Social Security Administration (SSA) psychological professionals and vocational analysts unanimously found nonexertional limitations, see 28 U.S.C. §§ 404.1569a(c), 416.969a(c) (2002) (nonexertional limitations include difficulty in functioning due to anxiety or depression, handling detailed instructions, or maintaining attention and concentration); on the PRTFs that the SSA psychologists completed, they found Van Winkle often deficient in concentration, persistence, or pace; and both of the SSA vocational analysts specifically concluded that Van Winkle could not perform her PRW, see Banks v. Massanari, 258 F.3d 820, 827 (8th Cir. 2001) (after claimant meets burden of proving she cannot perform PRW, burden shifts to Commissioner to show there is other work claimant can perform; if nonexertional impairments exist, grids may not be used and vocational expert testimony is required). Although the ALJ justified his differing PRTF findings, and his conclusion about the lack of significant nonexertional limitations, in part on the additional evidence he had before him, we fail to see how the added evidence supports his conclusions. Thus, the ALJ should use the PRTF and functional-capacity findings that he obtains from CCS staff to reassess whether Van Winkle's mental RFC precludes her PRW; and then, if necessary, he should call a vocational expert to determine whether she can perform other work.

Accordingly, we reverse the judgment of the district court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.